# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARCUS J., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO. C17-5932-JPD <br><br><br><br> ORDER AFFIRMING THE COMMISSIONER |

Plaintiff appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the first administrative hearing, plaintiff was a forty-seven year old man with a high school education and some college. Administrative Record ("AR") at 56, 65. He is an army veteran with experience as a U.S. Army electronics mechanic. AR at 60, 96. Plaintiff has not worked since he left the army in 2008. AR at 62.

ORDER - 1

On March 5, 2012, plaintiff filed an application for DIB, alleging an onset date of July 20, 2010. AR at 1277. Plaintiff's date last insured was December 31, 2013. AR at 1315. Plaintiff asserts that he is disabled due to post-traumatic stress disorder ("PTSD") from his deployment at Desert Shield/Desert Storm, left shoulder pain, and carpal tunnel syndrome. AR at 86.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 1277. Plaintiff requested a hearing, which took place on September 4, 2013 in Tacoma, Washington. AR at 51-118. On March 24, 2014, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 22-45. Plaintiff's request for review was denied by the Appeals Council, AR at 6-12, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff appealed his case to this Court, challenging the Commissioner's decision.

By Order dated June 13, 2016, the Honorable Brian A. Tsuchida issued an order remanding plaintiff's claim for a new hearing. AR at 1364-81. Judge Tsuchida affirmed the Commissioner's rejection of plaintiff's testimony as well as plaintiff's wife's testimony. AR at 1371, 1378-79.[1] Judge Tsuchida also affirmed the ALJ's evaluation of the opinions of Dr. Warner, Dr. Hander, and Dr. Virji, but held that the ALJ erred by failing to discuss the opinion of Nurse Spataro. AR at 1374-75, 1377.[2] Judge Tsuchida held that on remand, the ALJ also needed to re-evaluate the opinions of the State agency consultants Drs. Michael Regets and Leslie Postovoit, as the ALJ erred by assuming the doctors had examined plaintiff in forming

---

[1] He noted that "to the extent a reevaluation of the medical evidence necessitates further evaluation of [plaintiff's] credibility, the ALJ may revisit that determination []." AR at 1381.
[2] Although the ALJ also failed to discuss the opinion of Dr. Johenegger, Judge Tsuchida concluded that the error was harmless as plaintiff failed to identify any limitations assessed by Dr. Johenegger that the ALJ failed to incorporation into the RFC. AR at 1376.

ORDER - 2

their opinions. AR at 1377. Judge Tsuchida further found that the ALJ erred in discounting the VA's disability rating based solely upon a conclusory assertion that the disability rating was "grossly inconsistent" with the medical evidence, and therefore ordered the ALJ to re-evaluate the VA rating on remand. AR at 1379. Accordingly, on remand, the ALJ was directed to (1) re-evaluate plaintiff's VA disability rating; and (2) re-evaluate the opinions of Paul Spataro, A.R.N.P., Michael Regets, Ph.D., and Leslie Postovoit, Ph.D. AR at 1381. The ALJ could also choose to re-evaluate plaintiff's testimony, if necessary. AR at 1381.[3]

A second hearing was held before the same ALJ on April 14, 2017. AR at 1311-27. On July 12, 2017, the ALJ issued an unfavorable decision finding plaintiff not disabled. AR at 1274-1310. After sixty-one days, this decision became final, and plaintiff timely initiated this action challenging the ALJ's decision. Dkt. 4.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

---

[3] The ALJ correctly acknowledged the Court's directives in his written decision. AR at 1277.

ORDER - 3

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

ORDER - 4

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[4] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[4] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 5

to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 12, 2017, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2013.

2. During the period from July 20, 2010, the alleged onset date of disability, through December 31, 2013, the date last insured, the claimant did not engage in substantial gainful.

3. Through December 31, 2013, the date last insured, the claimant had the following severe medically determinable impairments: obstructive sleep apnea; left shoulder degenerative joint disease/impingement syndrome; lumbar and cervical spine degenerative disc disease; mild right carpal tunnel syndrome; post-traumatic stress disorder (PTSD); adjustment disorder/depression; and alcohol dependence.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that through December 31, 2013, the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), but with the following exceptions. He could occasionally balance, stoop, kneel, crouch, crawl, and climb. He could frequently reach overhead and handle with the bilateral upper extremities. He could frequently reach in all other directions and finger with the left non-dominant upper extremity. He could have occasional exposure to workplace hazards such as unprotected heights and dangerous machinery. He could perform simple routine repetitive tasks, which is defined as tasks with a reasoning level no greater than

        2.  He could have no interaction with the public as part of his job duties. He could have occasional interaction with co-workers as part of his job duties.

6. Through December 31, 2013, the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1966 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured.[5]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through December 31, 2013, the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from July 20, 2010, the alleged onset date, through December 31, 2013, the date last insured.

AR at 1279-1303.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1. Does the principle of law of the case preclude the Court from considering several of the assignments of error identified by the plaintiff, because the Court has already ruled on those issues?

2. Did the ALJ err in evaluating the medical opinion evidence?

Dkt. 12 at 1; Dkt. 13 at 1.

---

[5] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

ORDER - 7

## VII. DISCUSSION

A. <u>The Law of the Case Doctrine Precludes the Court from Considering Several of Plaintiff's Assignments of Error, Which the Court Previously Resolved</u>

The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 82 F.3d 563, 567 (9th Cir. 2016). The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). In the Social Security context, prior findings by an ALJ such as, for example, a step four determination that a claimant cannot perform his past relevant work generally "should not be reconsidered under the law of the case doctrine." *Id*. "The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). In other words, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000). "Application of the doctrine is discretionary." *Id*. Thus, even if the doctrine applies, a court may exercise its discretion to depart from it because of exceptions that arise "when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567 (citing *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).

Here, the Commissioner argues that the law of the case doctrine precludes this Court from considering plaintiff's allegations that the ALJ erred by rejecting plaintiff's testimony, as well as the lay testimony of plaintiff's spouse, the opinion of Dr. Warner, as well as the opinion of Dr. Hohenegger. Dkt. 13 at 1-3. The Commissioner asserts that the previously-assigned Magistrate Judge already decided these issues, either explicitly or by necessary implication. *See Quern,* 440 U.S. at 347 n. 18; *Lummi Indian Tribe,* 235 F.3d at 452.

The Commissioner is correct. As noted above, following the first administrative hearing, Judge Tsuchida affirmed the ALJ's evaluation of the opinions of Dr. Warner, Dr. Hander, and Dr. Virji, but held that the ALJ erred by failing to discuss the opinion of Nurse Spataro. AR at 1374-75, 1377.[6] Judge Tsuchida held that on remand, the ALJ was only required to re-evaluate the opinions of the state agency consultants Michael Regets and Leslie Postovoit, as the ALJ erred by assuming the doctors had examined plaintiff in forming their opinions. AR at 1377. He also found that the ALJ erred in discounting the VA's disability rating based upon a conclusory assertion that the disability rating was "grossly inconsistent" with the medical evidence, and therefore ordered the ALJ to re-evaluate the VA rating on remand. AR at 1379. Accordingly, on remand, the ALJ was directed to (1) re-evaluate plaintiff's VA disability rating; (2) re-evaluate the opinions of Paul Spataro, A.R.N.P., Michael Regets, Ph.D., and Leslie Postovoit, Ph.D., and (3) re-evaluate plaintiff's testimony, only if necessary. AR at 1381.

Accordingly, the Court declines to consider plaintiff's allegations of error which were previously resolved by this Court. As the ALJ's detailed evaluation of plaintiff's testimony was also affirmed by Judge Tsuchida, the Court does not find it necessary to revisit that issue a second time.[7]

---

[6] Although the ALJ also failed to discuss the opinion of Dr. Johenegger, Judge Tsuchida concluded that the error was harmless as plaintiff failed to identify limitations the ALJ failed to incorporation into the RFC. AR at 1376.

[7] Indeed, the ALJ reiterates his previous rejection of plaintiff's testimony, by including even more reasons for finding plaintiff's testimony regarding the severity of his limitations less than fully credible such as citing numerous examples of secondary gain motivation. AR at 1293-95. The ALJ's reasons are clear, convincing, and supported by substantial evidence.

ORDER - 9

B. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

ORDER - 10

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2. Paul Spataro, MSN, ARNP

Consistent with this Court's Order, the ALJ evaluated Mr. Spataro's opinion for the first time on remand. AR at 383-84, 1297-98. In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons

ORDER - 11

that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

The ALJ summarized Mr. Spataro's treatment records at the VA Medical Center in detail, and provided several specific and germane reasons for giving Mr. Spataro's opinion little weight. AR at 383-84, 1289-91, 1297-98. First, the ALJ found that the "record strongly suggests that [Mr. Spataro] assessed [plaintiff]'s mental health limitations based on [plaintiff]'s subjective complaints and request to support his claim based on his 70% PTSD rating with the VA." AR at 1297. While an ALJ may not reject an opinion about a claimant's mental health for its "partial reliance" on the claimant's unreliable self-reports, an ALJ may still reject an "opinion of disability premised *to a large extent* upon the claimant's own accounts of his symptoms and limitations." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)) (emphasis added). Mr. Spataro identified either moderate or marked limitations in twenty different categories of function. AR at 383-84. However, only two pieces of evidence accompanied this opinion: a summary of plaintiff's self-reported symptoms and issues, and a mental status exam showing no abnormalities other than a "mildly anxious" affect. AR at 383-84. Thus, the ALJ reasonably concluded that Mr. Spataro relied to a large extent on plaintiff's subjective complaints which were less than fully credible. Although plaintiff insists that "Mr. Spataro was able to base his opinion on his clinical findings and his longitudinal knowledge of [plaintiff's] condition," plaintiff identifies no such findings in Mr. Spataro's opinion. Dkt. 12 at 6. More importantly, there is nothing in Mr. Spataro's opinion to suggest that he relied on findings or symptoms other than those accompanying his report. AR at 383-84. Accordingly, the ALJ could reasonably reject Mr. Spataro's opinion.

Second, the ALJ found that Mr. Spataro's opinion was inconsistent with plaintiff's "grossly intact memory, insight, and judgment during treatment visits and evaluations." AR at 1297. For example, the ALJ noted that "the medical evidence establishes that the claimant endorsed rather

ORDER - 12

benign mental health problems during his treatment visits and his conditions responded well to medications." AR at 1297. An opinion's consistency with the rest of the record is a proper factor to consider when weighing the opinion. *See* 20 C.F.R. § 404.1527(c)(4). Mr. Spataro believed that plaintiff had moderate and marked limitations in his ability to remember instructions and make decisions. AR at 383-84. However, Mr. Spataro also found that plaintiff's memory was intact. AR at 383. Many other examinations also reflected that plaintiff also had normal memory, judgment, and insight, contrary to Mr. Spataro's assessment. AR at 407, 532, 535, 575, 876, 1019, 1030, 1033, 1035, 1161, 1225, 1260. Thus, the ALJ's reasoning was germane and supported by substantial evidence in the record.

Finally, the ALJ concluded that Mr. Spataro's opinion was inconsistent with plaintiff's numerous daily activities. AR at 1297-98. An ALJ may discount an opinion that conflicts with the claimant's daily activities. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Contrary to Mr. Spataro's assessment of moderate and marked cognitive and social limitations, AR at 383-84, plaintiff attended church, independently carried out the household chores without difficulty, cared for a dog, shopped for groceries and home supplies, and ran three to four miles at least twice a week on the army base. AR at 367, 531, 573-74, 907, 920, 1055, 1097-98, 1229. Plaintiff also worked on his car as a hobby, and worked on his computer. AR at 368, 505, 535, 628, 790, 867, 1059, 1229, 1297. Plaintiff argues that his activities "are consistent with Mr. Spataro's opinion about [his] impaired concentration," but offers no explanation as to how this is the case. Dkt. 12 at 6. Accordingly, the ALJ provided several legally sufficient reasons, supported by substantial evidence, for rejecting Mr. Spataro's lay opinion.

### 3. *VA Disability Rating*

The ALJ rejected the VA disability rating, finding that "the VA uses an entirely different system and set of standards than the Social Security Administration to assess disability." AR at 237, 1300-01. The ALJ found that the "overall medical evidence of record strongly suggests that

ORDER - 13

the VA relied primarily on the claimant's subjective reports" in forming its opinion. AR at 1300. Moreover, "there is absolutely nothing in the record to support the level of mental debilitation reflected in the VA's disability rating." AR at 1300.

Plaintiff does not dispute that the VA based its opinion on his own unreliable subjective reports. Dkt. 12 at 8. Indeed, the VA reviewed medical records that showed either no treatment or no increase in the severity of his condition, plaintiff's own report about his impairments, and an examination that reflected few abnormalities beyond plaintiff's allegation of intrusive thoughts. AR at 239-40. Thus, plaintiff allegations about the weight that should be afforded to the VA disability rating amounts to an argument that more weight should be afforded to his own testimony. As discussed above, however, the Court has affirmed the ALJ's decision to give plaintiff's testimony limited weight. AR at 1365-71. Similarly, the ALJ did not err in this case by giving the VA rating little weight because it was based on plaintiff's self-reports, which the ALJ considered less than fully reliable. Plaintiff has not shown harmful error in the ALJ's assessment of the VA Disability Rating. AR at 1300.

    4.    *Michael Regets, Ph.D. and Leslie Postovoit, Ph.D.*

As noted above, the Court previously found that, in his prior decision, the ALJ "erred in assuming the doctors [Regets and Postovoit] examined Mr. Jennings in forming their opinions." AR at 1377. However, this was the only error the Court found with respect to the ALJ's treatment of their opinions. AR at 1377. Specifically, the ALJ had given "great weight" to the opinions of Drs. Regets and Postovoit, but rejected the portion of their opinions finding that plaintiff could have only superficial contact with coworkers. AR at 41-42, 129, 143-45. Plaintiff argued that the ALJ also erred by finding that plaintiff could have more than superficial contact with coworkers based upon his ability to "go grocery shopping, attend

ORDER - 14

church, and engage in a cooperative and pleasant manner with medical personnel." AR at 42. The Court, however, rejected plaintiff's "conclusory statement" as unpersuasive. AR at 1377.

On remand, the ALJ corrected his prior error, and acknowledged that "the doctors did not examine the claimant in person." AR at 1299. The ALJ afforded "partial weight" to the opinions at issue, and reiterated his prior finding that their finding that he could only have superficial contact with coworkers conflicted with plaintiff's numerous activities, including "his ability to regularly engage appropriately with treating medical/mental health providers, participate in a half marathon, shop, and regularly go to the gym. The record indicates that he can tolerate occasional interaction in the workplace." AR at 1299. The Court finds that the ALJ corrected his prior error, and the ALJ could reasonably reject the portion of the doctors' opinions finding that plaintiff could have only superficial contact with coworkers. AR at 41-42, 129, 143-45.[8] The ALJ did not error in evaluating their opinions.

## VIII. CONCLUSION

The role of this Court is limited. As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational

//

//

---

[8] Plaintiff only reiterates his prior argument that "their opinion on this issue is not contradicted by [plaintiff's] activities." Dkt. 12 at 9. This conclusory assertion is, once again, insufficient to demonstrate harmful error. AR at 1377.

ORDER - 15

interpretation. For the foregoing reasons, the Court AFFIRMS the Commissioner's decision.

DATED this 20th day of November, 2018.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 16